# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### April 5, 2005 Session

## KENNETH STRICKLAND v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rutherford County**
**No. F-55198     J. S. Daniel, Judge**

---

### No. M2004-02295-CCA-R3-PC - Filed May 31, 2005

---

The Defendant, Kenneth Strickland, was convicted by a jury of possession of .5 grams or more of cocaine with the intent to sell or deliver, and sentenced to twelve years in the Department of Correction. The judgment against the Defendant was affirmed on direct appeal. See State v. Kenneth Strickland, No. M2002-00543-CCA-R3-CD, 2003 WL 21997739 (Tenn. Crim. App., Nashville, Aug. 22, 2003). The Defendant subsequently filed for post-conviction relief claiming that he had been denied the effective assistance of counsel at trial. After an evidentiary hearing the trial court denied relief and this appeal followed. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and J. C. MCLIN, JJ., joined.

Allen D. Hale, Murfreesboro, Tennessee, for the appellant, Kenneth Strickland.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; and William C. Whitesell, Jr., District Attorney General, for the appellee, State of Tennessee.

### OPINION

We repeat here the summary of facts underlying the Defendant's conviction set forth in our opinion addressing the Defendant's direct appeal.

> Kenneth Cooper, a confidential informant, and Detective Nick Watson, of the La Vergne Police Department, set up a "reverse sting" in which the appellant would purchase a kilo of cocaine from Detective Watson for a purchase price of $23,500. After several conversations regarding the transaction, the three men agreed to meet at a BP gasoline station on February 17, 2000. From this location, the three men immediately proceeded to the Food Lion grocery store on Murfreesboro Road.

Detective Watson had previously arranged for a surveillance team to be waiting at the Food Lion.

Upon their arrival at the grocery store, Detective Watson contacted Lieutenant Al Watson, who was to act as his "supplier." Lieutenant Watson brought Detective Watson a bag containing a small, clear, plastic sample bag of cocaine and a "kilo" of cocaine. In reality, the "kilo" was sugar which had been hardened and packaged to resemble cocaine. The appellant felt of the "kilo" twice and inspected the sample package. Then the appellant confessed that he did not have the money to purchase the "kilo," and he returned the bag containing the sample and the "kilo" to Lieutenant Watson. The appellant pled with Detective Watson to allow him until the next day to attempt to obtain the funds to purchase the kilo and asked Cooper to accompany him while he attempted to obtain the money. Whereupon, Cooper and the appellant traveled around Nashville, ultimately collecting approximately $10,000. The appellant inquired about purchasing one half of a kilo of cocaine, but Detective Watson was reluctant to make such a sale.

The next day, February 18, 2000, after agreeing to sell the appellant one half of a kilo of cocaine, Detective Watson again met the appellant at Food Lion. Upon his arrival, the appellant sat in the detective's undercover vehicle and the two men discussed the impending transaction and future drug deals. The appellant then showed Detective Watson a large amount of money in his billfold, but he did not give the money to Detective Watson. After seeing the money, Detective Watson obtained the one half of a "kilo" and the sample package from Lieutenant Watson and handed the bag containing the drugs to the appellant. Detective Watson then relayed the "take down phrase" and the appellant was arrested. Detective David Loftis of the La Vergne Police Department was part of the "take down" team and he saw the appellant in possession of the bag containing the cocaine at the time of the arrest. Subsequent to the arrest, the police searched the appellant and discovered the bag containing the cocaine, $9,073 in cash, a diamond cluster ring, other jewelry, and cellular telephones.

The contents of the bag were examined by Agent Glen J. Glenn of the Tennessee Bureau of Investigation crime laboratory. Agent Glenn confirmed that the "kilo" did not test positive for controlled substances, but revealed that the sample bag contained 2.9 grams of cocaine.

State v. Kenneth Strickland, No. M2002-00543-CCA-R3-CD, 2003 WL 21997739, at *1-2 (Tenn. Crim. App., Nashville, Aug. 22, 2003).

At his post-conviction hearing, the Defendant testified that he hired his trial lawyer ("Counsel") about a week prior to his preliminary hearing. They discussed the Defendant's case during their initial meeting. The Defendant then met Counsel at the courthouse prior to the

scheduled hearing. The Defendant testified that Counsel told him that he should waive his preliminary hearing. They did not discuss what the hearing entailed or its ramifications. The Defendant maintained that he did not waive his hearing, rather Counsel did. The Defendant testified that he never went into the courtroom to waive the hearing. The Defendant stated that, in spite of his previous convictions, he had never before had a preliminary hearing.

The Defendant explained that, after he was indicted, he met with Counsel "in his office a couple of times." Each meeting lasted for a couple of hours and involved preparing for trial. They also spoke on the phone a number of times. The Defendant was concerned that one of the police officers had claimed that the amount of money he seized from the Defendant was less than it actually was. The Defendant wanted Counsel to pursue this discrepancy in the State's proof. The Defendant stated that he made Counsel aware of this fact prior to the preliminary hearing.

Prior to trial, the State offered the Defendant a plea bargain involving a sentence of six years. Counsel and the Defendant discussed the offer, and the Defendant testified that Counsel "said [he] couldn't take the six years because [he] was on parole, and [he] would have to flatten it then and begin a new sentence." The Defendant stated that Counsel also told him that he "probably could beat [his] case at trial [and that Counsel] felt that . . . a jury wouldn't convict [him]." The Defendant rejected the plea offer because Counsel told him he "would probably be better going to trial."

On cross-examination, counsel for the State showed the Defendant a document titled "Waivers." This document, which was made an exhibit to the hearing, contains waivers of both the right to counsel and the right to a preliminary hearing. The Defendant acknowledged that his signature appeared below the waiver of the right to counsel. Counsel's signature appeared below the waiver of the right to a preliminary hearing.

On redirect, the Defendant explained that he never waived his right to counsel and that he continued to be represented by counsel throughout the proceedings. He also stated that he never intended to waive his preliminary hearing. Rather, Counsel "made the decision about the preliminary hearing."

Counsel testified that he met with the Defendant eight to ten times prior to the preliminary hearing. Counsel maintained that both he and the Defendant were prepared for the preliminary hearing. Counsel stated that he explained to the Defendant his right to a preliminary hearing and the purposes of the hearing. He advised the Defendant to waive the hearing. Counsel reviewed the Waivers document and explained that he had gone over this document with the Defendant and he and the Defendant simply made mistakes in where they placed their signatures.

Counsel acknowledged that one of the lawyers with whom he shared office space and, at one point, a secretary, represented one of the Defendant's two codefendants. The Defendant was aware of this. Counsel learned that one of the Defendant's codefendants planned on testifying against him at the Defendant's preliminary hearing. Counsel testified he made a tactical decision that the Defendant would be better off by waiving his preliminary hearing so that the adverse testimony

would not be preserved for the record. Counsel stated that he discussed this strategy with the Defendant and the Defendant, upon his advice, agreed to waive his preliminary hearing. Counsel maintained at the post-conviction hearing that the decision was "the most appropriate thing for [the Defendant]."

Counsel testified that he met with the Defendant numerous times after the Defendant was indicted; he visited the crime scene; obtained discovery from the State; and interviewed the State's witnesses. The Defendant told him about the discrepancy in how much money had been seized from him, but Counsel determined that he did not want the Defendant

> to have any association as far as the jury with any money at all. [His] job [as counsel] was to keep that money away from [the Defendant]. [They] discussed all of this . . . and it was just a tactic [he] used. [He] did not want [the Defendant] associated with the money, period.

The Defendant did not object to this strategy. Counsel developed two theories of defense: entrapment and attacking the State's proof about whether the Defendant had ever actually possessed the drugs. As the case developed, Counsel had to abandon the entrapment defense, but pursued his attack on the State's proof. According to Counsel, "it got down to a factual issue . . . [of] who are you going to believe."

Prior to trial, the State made a plea bargain offer of six years as a Range I offender. Counsel explained the offer to the Defendant, together with all of its ramifications, but left the decision to the Defendant. The Defendant decided that he wanted to go to trial, stating that if he took the offer, his parole would be revoked. Counsel did not tell the Defendant that the jury would not convict him. Counsel did tell the Defendant that, if he was convicted at trial, he would be sentenced as a Range II offender.

Counsel admitted that he did not request a jury instruction on the lesser-included offense of solicitation. He stated that, had he the trial to do over, he would request the instruction.

After hearing the above proof, the trial court denied relief. The trial court's order provides as follows:

> 1. Petitioner's Counsel was not ineffective in waiving Petitioner's right to a Preliminary Hearing in this matter. The Court finds the trial attorney was not ineffective in either discussing the right of a Preliminary Hearing, the impact of a Preliminary Hearing, or in counsel waiving said hearing, because Petitioner has had significant prior involvement in the criminal judicial process. Further, this Court finds that Petitioner probably intended to waive his Preliminary Hearing, although his signature appears on the wrong part of the Waiver Form.
> 2. Petitioner's trial counsel was not ineffective in pre-trial preparation, failing to communicate with the client, or in failing to request a jury charge of solicitation to

commit a crime by Petitioner. The Court finds that Trial Preparation was adequate, as was the attorney's communication with Petitioner. Further, the Court finds that trial counsel's failure to request the Jury instruction of solicitation, which under the facts of this case may have been an appropriate charge, does not support a finding of ineffective assistance of counsel.

3. The Court finds that trial counsel represented Petitioner while working in the same office as Counsel for a co-defendant who eventually was severed from the case. The Court finds that there was inappropriate commingling of information. This is troubling to the Court, however, in the scheme of things on this Petition it is not a basis to set aside the conviction.

In this direct appeal, the Defendant alleges that the trial court should have granted relief on the basis of Counsel's waiver of the Defendant's preliminary hearing, his failure to request an instruction on the lesser-included offense of solicitation, and on the "cumulative effect" of Counsel's errors.

**STANDARD OF REVIEW**

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The trial judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

Both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer, and actual prejudice to the defense caused by the deficient performance. See id. at 687; Burns, 6 S.W.3d at 461. The defendant bears the burden of establishing both of these components by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either

deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. See Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." See Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. See id. "However, a trial court's conclusions of law--such as whether counsel's performance was deficient or whether that deficiency was prejudicial--are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id.

**ANALYSIS**

With respect to the waiver of his preliminary hearing, the Defendant argues that "the primary benefit to a defendant [of a preliminary hearing] is to subject the State's proof to cross examination," and that Counsel "in making the decision for [the Defendant] and waiving the preliminary hearing in this case, with the facts present at the time, was not reasonable." However, the Defendant points to no actual prejudice which he suffered as a result of his failure to have a preliminary hearing. The Defendant states that, had Counsel conducted the preliminary hearing, he would have discovered that the State had at least one witness whose testimony was that the Defendant possessed the drugs prior to his arrest. Then, the Defendant argues, Counsel could have sought "rebuttal evidence." However, the Defendant has made no showing of what, if any, rebuttal evidence he might have garnered had the preliminary hearing been conducted. That is, the Defendant has failed to demonstrate that his lawyer's strategy cost the Defendant some advantage or benefit at trial that might have had an effect on the jury's verdict. Having demonstrated no prejudice from this alleged instance of deficient performance, the Defendant is not entitled to post-conviction relief on this basis.

In connection with this argument, the Defendant also complains about Counsel's continued representation of him after learning that a lawyer with whom Counsel shared office space was representing a codefendant. Again, however, the Defendant has failed to demonstrate that he was prejudiced in any way by this fact and has therefore failed to establish that he is entitled to post-conviction relief on this basis.

We turn now to the Defendant's allegations concerning Counsel's failure to request a jury instruction on the lesser-included offense of solicitation. Our criminal code defines the offense of solicitation as follows:

> Whoever, by means of oral, written or electronic communication, directly or through another, intentionally commands, requests or hires another to commit a criminal offense, or attempts to command, request or hire another to commit a criminal offense, with the intent that the criminal offense be committed, is guilty of the offense of solicitation.

Tenn. Code Ann. § 39-12-102(a). Our supreme court has determined that solicitation to commit the offense charged is a lesser-included offense of the offense charged. See State v. Burns, 6 S.W.3d 453, 467 (Tenn. 1999). The Defendant was charged with possession of .5 grams or more of cocaine with the intent to deliver or sell. See Kenneth Strickland, 2003 WL 21997739, at *1. The Defendant argues that his actions in requesting the undercover police officer to sell him cocaine constituted the crime of solicitation and therefore entitled him to an instruction on same as a lesser-included offense of the crime with which he was charged.

The Defendant misapprehends the nature of solicitation as a lesser-included offense as opposed to solicitation as a separate and complete offense in and of itself. When the Defendant asked to purchase cocaine from the undercover police officer, the Defendant committed the crime of solicitation because he was soliciting the undercover officer to commit the offense of selling cocaine. Because the crime of solicitation is complete when one solicits another to commit a crime, regardless of whether the solicitee actually commits the crime solicited, the Defendant could have been charged with solicitation in addition to the crime with which he was actually charged. However, the Defendant's conduct in requesting to purchase cocaine was not solicitation of the crime with which he was charged: his own possession of cocaine. The concept of soliciting one's own possession of drugs is a non sequitur. One cannot solicit another to commit a crime that requires, by definition, one's own criminal conduct. That is, one cannot solicit another to commit one's own possession of drugs. Accordingly, under the facts of this case, solicitation was not a lesser-included offense of the offense with which the Defendant was charged. Counsel was therefore not deficient in failing to request a jury instruction on this "offense" and the Defendant is not entitled to post-conviction relief on this basis.

Finally, the Defendant asserts that he is entitled to post-conviction relief on the basis of the "cumulative effect of Trial Counsel's errors." We disagree. The Defendant has not demonstrated by the requisite degree of proof that Counsel's performance caused him any prejudice or calls into question the reliability of the jury's verdict. Counsel made adequate investigation into the State's case against the Defendant, made a tactical decision concerning the Defendant's preliminary hearing, pursued two theories of defense to the extent possible under the facts of the case, and did not err in not requesting an instruction on solicitation as a lesser-included offense. The Defendant is not entitled to post-conviction relief on the basis that he received ineffective assistance of counsel at trial.

Accordingly, we affirm the judgment of the trial court.

_____

DAVID H. WELLES, JUDGE